UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE GOOGLE DIGITAL ADVERTISING
ANTITRUST LITIGATION                                           21-md-3010 (PKC)

PRE-TRIAL ORDER NO. 18

-----------------------------------------------------------

CASTEL, District Judge:

   Certain plaintiffs in these MDL proceedings moved for partial summary judgment under the doctrine of issue preclusion based upon the findings of fact and conclusions of law of Judge Leonie Brinkema after the trial of an action brought by the United States and certain states in the United States District Court for the Eastern District of Virginia.  United States v. Google LLC, 23-cv-108 (LMB/JFA), 778 F. Supp. 3d 797 (E.D. Va. Apr. 17, 2025) (the "E.D. Va. Action").  In opposition to the various motions in these coordinated proceedings, Google LLC ("Google") argued that the geographic market definition adopted by Judge Brinkema in the E.D. Va. Action (principally, worldwide) was different from that urged by the plaintiffs in these proceedings (principally, the United States) and that issue preclusion was therefore inappropriate.

   Plaintiffs argued that they were entitled to summary judgment regardless of whether the market was defined as the United States or worldwide.  The Publisher Class noted that an amendment conforming the pleadings to the geographic market definition in the E.D. Va. Action would render many of Google's arguments moot.  (21-cv-7034, ECF 224 at 13, ECF 243 at 19.)  The Court set a schedule for any plaintiff wishing to file a motion to amend to conform its pleading to Judge Brinkema's findings and conclusions.  (ECF 1106.)  The Court's Order

directed the parties to address whether the conforming amendments would prejudice Google and what impact, if any, they would have on the pending summary judgment motions.

The Advertiser Class, the Publisher Class, Inform, the Daily Mail and Gannett have moved to amend principally to allege a worldwide market as an alternative to a United States market. (ECF 1118, 1120, 1126, 1130.)[1] Google has responded in opposition (ECF 1147, 1156, 1157, 1158) and briefing is now closed. For reasons to be explained, the motions will be granted.

Google Suffers No Unfair Prejudice from an
<u>Alternative Allegation of a Worldwide Market</u>

The Judicial Panel on Multidistrict Litigation transferred certain actions to the undersigned for coordinated or consolidated pretrial proceedings. (MDL No. 3010, ECF 126, Aug. 10, 2021.) Thereafter, the United States (the "DOJ"), joined by several states, elected to bring the E.D. Va. Action in January 2023. Speaking of this MDL, Google described the E.D. Va. Action as "challenging the same alleged conduct, under the same laws, seeking the same remedies, but in a different court" (E.D. Va. Action, ECF 44-2 at 8) and asserted that the E.D. Va. Action and this MDL were "substantively identical cases" (<u>Id.</u>, ECF 50 at 6). Indeed, Google unsuccessfully moved in the E.D. Va. Action to transfer that action to this District for coordinated proceedings. (<u>Id.</u>, ECF 44.)

Because of the manifest overlap of the claims and defenses in the E.D. Va. Action and those in this Court, the parties in both actions agreed upon the terms of a Coordination Order that was thereafter entered as Orders in the E.D. Va. Action and this MDL. (ECF 564.) It

---

[1] The Advertiser Class motion proposes to delete references to four since-dismissed plaintiffs. (ECF 1119-2 at 17-18.)

generally provided for the sharing of discovery materials and non-duplicative questioning of fact witnesses at depositions, subject to certain limitations.

Google conducted discovery and went to trial in the E.D. Va. Action, defending claims by the DOJ that the relevant market was either the United States or worldwide (excluding certain restricted markets). Judge Brinkema noted that "[p]laintiffs and Google agree that the United States is a suitable geographic market" but that the plaintiffs considered a worldwide market to be "optimal." 778 F. Supp. 3d at 847. Google urged that the relevant geographic market should be nationwide. After hearing the evidence and reviewing the briefing, Judge Brinkema found that the relevant geographic market for publisher ad servers for open-web display advertising and ad exchanges for open-web display advertising is worldwide. Id. at 848. The Court based its finding principally on the "globally networked nature of the Internet," that Google markets and the demand for its services are worldwide, that these digital services travel easily across borders without shipping costs and that, with a few exceptions carved out of the market definition,[2] the regulatory environments are similar. Id. at 848-49.

In their pleadings in these MDL proceedings, plaintiffs alleged that the relevant geographic market is the United States. But each side was appropriately hesitant to take a bold stance on the relevant geographic market. For example, Gannett took the position in June 2024 in response to an interrogatory posed by Google that "[s]ubject to ongoing and forthcoming expert discovery and analysis, Gannett anticipates the geographic scope of the relevant markets will be either the United States or worldwide less China." (ECF 1133-10 at 4.) In a similar timeframe, Google took a wait-and-see approach in responding to a Daily Mail interrogatory,

---

[2] Judge Brinkema accepted the DOJ experts' carve-out from the definition of worldwide those countries with substantial government censorship of the internet, such as China, and those subject to U.S. sanctions, such as Iran. Id. at 847 n. 26.

3

objecting that the interrogatory seeking its view on geographic market "prematurely and improperly seeks expert opinion" and that it was plaintiff's burden to demonstrate the existence of a relevant geographic and product market.  (ECF 1133-15 at 4.)

Plaintiffs point out that Google has used the same expert, Dr. Mark Israel, in both this MDL and the E.D. Va. Action.  Dr. Israel opined in the E.D. Va. Action that the United States was the relevant geographic market but "my conclusions that Google lacks monopoly power and that its challenged conduct has not harmed competition do not depend on whether the relevant geographic market is the United States or worldwide."  (ECF 1133-5 at 10.)  Dr. Israel made a substantially identical observation in his report in this MDL.  (ECF 1133-6 at 8.)  He noted further that "[m]y backup materials contain key empirical results demonstrating that all my conclusions hold in a worldwide geographic market. . . ."  (Id. at 9.)  The Publisher Class's expert in these MDL proceedings opined that "[t]he relevant geographic market for the open web display ad transactions at issue in this case is no smaller than the United States," that "[s]ome evidence supports limiting the geographic market to the United States," and that "[o]ther evidence supports defining a worldwide market."  (Einer Elhauge Rpt. ¶¶ 180, 181, 186 (ECF 959-1).)

"The relevant market for purposes of antitrust litigation is the 'area of effective competition' within which the defendant operates."  AD/SAT, Division of Skylight, Inc. v. Associated Press, 181 F.3d 216, 227 (2d Cir. 1999) (quoting Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327-28 (1961)).  A judicial determination of the relevant geographic market for a monopolization claim presents a mixed question of fact and law.[3]  It is often guided by

---

[3] See, e.g., U. S. Bank N. A. v. Village at Lakeridge, LLC, 583 U.S. 387, 394 (2018) ("whether the historical facts found satisfy the legal test chosen" is a "so-called 'mixed question' of law and fact") (citing Pullman-Standard v. Swint, 456 U.S. 273, 289, n.19 (1982)).

expert opinion.[4]  Google has all the relevant facts and Google's experts have already opined on United States and worldwide markets, not just in the E.D. Va. Action but in these MDL proceedings.

        Google suffers no legal prejudice from expanding the relevant geographic market definition to include a worldwide market as an alternative to the United States market.  No plaintiff seeks to expand the scope of the eligible class.  Google and its experts have analyzed the facts of record from the standpoint of a United States market and a worldwide market.[5]  Any claim of prejudice by Google arises from the potential mootness of its argument that issue preclusion ought not apply because of differences in geographic market definitions.[6]  This Court concludes that this is not a cognizable form of unfair prejudice.

<u>There Is Good Cause to Permit the Conforming Amendments</u>

        Google argues that plaintiffs' motions to amend have been filed well over two years after the Court's scheduling limit on motions to amend.   The Court set an outside date on motions to amend at 30 days following its Order of November 21, 2022.  (ECF 394.)  Because the filing of the motions is outside the time limit of a scheduling order, plaintiffs must show

---

[4] "The natural market fallacy is the mistaken belief that the boundaries of relevant markets should conform to lay intuition, conventional language, or direct observation.  The error flows from a false assumption that markets are tangible objects.  They are not.  Markets are analytical constructs with no necessary relation to industry practices or popular conceptions of trade lines."  D. Glasner, S. Sullivan, *The Logic of Market Definition*, 83 Antitrust L.J. 293, 299 (2020).

[5] In its opposition memorandum, Google asserts that it "could have used the ten months of additional fact discovery in this case (after fact discovery closed in the Virginia case) to further develop its defenses to a worldwide market." (ECF 1153 at 7.)  But Google does not claim that it had inadequate time to develop its defenses to a worldwide market when faced with claims by the DOJ and several states.  The argument is weak and speculative.  It is not unusual for a party defending a monopolization claim to feel that it could benefit from more time.

[6] Google's contention that the expert for one plaintiff, Inform, only asserted a United States market does not alter the overall mix of information that was available to Google in these MDL proceedings. <u>McCarthy v Dun & Bradstreet Corp</u>., 482 F.3d 184 (2d Cir. 2007), is inapposite.  <u>McCarthy</u> rightly concluded that a defendant is not required "to anticipate future claims that a plaintiff might intend to pursue."  <u>Id.</u> at 202.  But the determination of which geographic area is the most relevant geographic market is not analogous to the assertion of a new claim.

"good cause." Rule 16(b)(4), Fed. R. Civ. P. ("A schedule may be modified only for good cause and with the judge's consent.").

Parker v Columbia, 204 F.3d 326, 339-40 (2d Cir. 2000), offers helpful guidance that satisfaction of the "good cause" requirement depends on the diligence of the party seeking to amend. The Second Circuit has noted that diligence is not the only consideration and that prejudice to the opposing party is also relevant consideration. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). Kassner also emphasized a district court's "broad discretion concerning the pleadings." Id. at 245.

Strictly speaking, plaintiffs fully complied with the Court's previously imposed deadline on motions to amend. The Court, after reading the parties' summary judgment briefs, invited the motions to amend. Plaintiffs promptly moved in accordance with the new schedule set by the Court. It is true that plaintiffs could have sought permission to move to amend immediately after Judge Brinkema's April 17, 2025 Opinion and did not do so. But the claimed prejudice to Google would likely not have been materially different, and plaintiffs' diligence or lack thereof should be assessed in the context of what was then transpiring in the MDL (expert discovery continuing to April 25, 2025; class certification briefing due May 2, 2025 with replies due July 16, 2025; and moving briefs on summary judgment due June 20, 2025 with reply briefs due August 1, 2025).

Most importantly, finding "good cause" and allowing the amendment furthers the command that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1, Fed. R. Civ. P. The Court has no opinion at this point on whether partial summary judgment based upon issue preclusion is appropriate. But allowing the amendments

and conforming the pleadings in these actions to Judge Brinkema's fact-finding after a three-week trial holds out a realistic possibility of advancing the interests of a just, speedy and inexpensive determination of the actions in this MDL.

<u>Futility</u>

There is little merit to Google's futility argument. The amended pleadings alleging a worldwide market in the alternative to a United States market (or, in one instance, a worldwide market with a United States submarket) would survive a motion to dismiss. Google has failed to show that pleading alternative relevant markets dooms a claim. Rule 8(d)(2), Fed. R. Civ. P. ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

If plaintiffs' partial summary judgment motions on issue preclusion fail, then Google may make a summary judgment motion on broader grounds, including that plaintiffs have not come forward with evidence sufficient to support their claims of relevant geographic or product markets. If such a motion were denied, Google would be free to challenge the existence or contours of relevant markets at trial.

CONCLUSION

The motions of the Advertisers Class, the Publishers Class, Inform, the Daily Mail and Gannett to amend their complaints in the manner identified in their marked-to show-changes proposed amendments are GRANTED. Amended pleadings shall be filed within seven days of this Order. Answers shall be filed within fourteen days thereafter. The motions to seal submissions in support or opposition to the motions to amend are provisionally granted.

The Clerk is respectfully requested to terminate the motions at 21-md-3010, ECF 1118, 1120, 1126, 1127, 1130, 1144, 1150, 1151, 1165, 1168, and 1174; 21-cv-3446, ECF 180,

182, 187 and 194; 21-cv-7001, ECF 280, 282, 283 and 289; 21-cv-7034, ECF 252, 261 and 262; 23-cv-1530, ECF 124, 125 and 131; and 23-cv-5177, ECF 118, 120, 125 and 132.

SO ORDERED.

P. Kevin Castel  
United States District Judge

Dated: New York, New York  
September 25, 2025