# FRESHFIELDS

**Silicon Valley**
855 Main Street
Redwood City, CA 94063
T +1 650 618 9250 (Switchboard)
   +1 650 461 8276 (Direct)
E justina.sessions@freshfields.com
www.freshfields.com

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

May 2, 2025

**Re:**   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC);
*In re Google Digital Publisher Litigation*, No. 1:21-cv-07034 (PKC)

Dear Judge Castel:

Pursuant to Your Honor's March 14, 2025 Order, ECF No. 926, Defendants Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") respectfully submit this pre-motion letter to request permission to move for summary judgment on all four counts in Publishers' First Amended Consolidated Class Action Complaint (ECF No. 408) ("Publ. Compl.").[1]  Google further requests that the Court establish an appropriate schedule and page limits for summary judgment briefing.  In accordance with Your Honor's Individual Practices, we note there is no conference currently scheduled before the Court.

Summary judgment in this case is not foreclosed by the recent decision in the related government case against Google.  *See United States v. Google LLC*, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025).  *First*, there is not yet a final judgment in the Virginia case, and it would be unfair to give the decision preclusive effect.  *Second*, in certain places, the Virginia court's decision applied Fourth Circuit law, which differs from the law of the Second Circuit.  *Third*, the decision contains multiple errors of law and unsupported factual findings, and Google plans to appeal it.  *Fourth*, Publishers advance several theories in this case that either were not part of the Virginia case or that were resolved in Google's favor.  *Fifth*, Publishers must prove more to prevail in this case than was required of the government.  *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) ("It is a well-established principle that, while the United States is authorized to sue anyone violating the federal antitrust laws, a private

---

[1] The Publishers are Genius Media Group, Inc. (n/k/a MediaLab AI, Inc.); The Nation Company, LLC; The Progressive, Inc.; JLaSalle Enterprises LLC; and Mikula Web Solutions, Inc.  Sterling International Consulting Group previously dismissed its claims against Google without prejudice.  *See* ECF No. 857.

plaintiff must demonstrate 'standing.'"). In short, the Virginia court's decision does not preclude granting summary judgment in this case on the grounds discussed below.

**Count I: Tying**

Count I alleges that Google violated Sections 1 and 2 of the Sherman Act by establishing four tying arrangements (Acts 1-4). Publ. Compl. ¶¶ 392-401; *see also id.* ¶¶ 15-19, 196-251. After the conclusion of a lengthy period of fact discovery, Publishers' principal expert, Professor Einer Elhauge, described in his opening report seven tying theories—two of which overlap with claims alleged in the Complaint (Acts 1-2), and five of which were articulated for the first time in that report (New Acts 17-21). Two tying theories in the Complaint (Acts 3-4) are not addressed by Professor Elhauge or any other of the Publishers' experts. Table 1 summarizes Publishers' tying claims.

**Table 1: Publishers' Tying Claims**

| Act | Tying Market (Google Product) | Tied Market (Google Product) | Allegations |
|---|---|---|---|
| 1 | Ad Exchange (AdX) | Ad Server (DFP) | Publ. Compl. ¶¶ 200-04, 226-30; Elhauge Rpt. ¶¶ 287-302 |
| 2 | Ad Server (DFP) | Ad Exchange (AdX) | Publ. Compl. ¶¶ 205-30; Elhauge Rpt. ¶¶ 303-09 |
| 3 | Ad Network (GDN) | Ad Server (AdSense/DFP) | Publ. Compl. ¶¶ 231-39 |
| 4 | Ad Server (AdSense/DFP) | Ad Network (GDN) | Publ. Compl. ¶¶ 231-39 |
| New 17 | Basic Ad Auction Platform (AdSense) | Basic Ad Server (AdSense) | Elhauge Rpt. ¶¶ 310-15 |
| New 18 | Basic Ad Server (AdSense) | Basic Ad Auction Platform (AdSense) | Elhauge Rpt. ¶¶ 310-15 |
| New 19 | Basic Ad Buying Tool (Google Ads) | Basic Ad Auction Platform (AdSense) | Elhauge Rpt. ¶¶ 269-75 |
| New 20 | Basic Ad Buying Tool (Google Ads) | Advanced Ad Auction Platform (AdX) | Elhauge Rpt. ¶¶ 269-75 |

| Act | Tying Market (Google Product) | Tied Market (Google Product) | Allegations |
|---|---|---|---|
| New 21 | Basic Ad Auction Platform (AdSense) | Basic Ad Buying Tool (Google Ads) | Elhauge Rpt. ¶¶ 276-86 |

Summary judgment should be granted on Acts 3 and 4 because Publishers abandoned those claims and there is no evidence to support them. Summary judgment should be granted on New Acts 17-21 because it would prejudice Google to allow Publishers to pursue theories that they did not assert until after the close of fact discovery. *See City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (affirming summary judgment and denial of leave to amend complaint when allowing amendment would "require additional discovery" that would "delay proceedings and require substantial additional expense"). In addition to these mismatches between what Publishers have alleged and what they have tried to prove, there are several additional and independent grounds for granting summary judgment on Publishers' tying claims.

*First*, summary judgment should be granted on the tying claims involving Google Ads (New Acts 19-21) because Publishers concede that Google Ads is a buying tool that advertisers—not publishers—choose whether to purchase. *See* Elhauge Dep. 73:3-8. "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force *the buyer* into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984) (emphasis added). And if the tying product and the tied product are purchased by separate groups of customers, then there is no tie at all. *See, e.g., De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 71 (2d Cir. 1996) (noting the "fundamental principle of antitrust law that an illegal tying arrangement requires that at least two products and/or services be purchased by the same individual" (internal quotation marks and citation omitted)). Because Publishers do not purchase or use Google Ads, they cannot recover on any tying claim involving that product.

*Second*, Publishers' tying claims involving AdSense (New Acts 17-18) fail because AdSense is and always has been a single, integrated product. *See Kaufman v. Time Warner*, 836 F.3d 137, 142 (2d Cir. 2016) ("[I]if there is no separate market for the allegedly tied product, there can be no fear of leveraging a monopoly in one market to harm competition in a second market."). Although Publishers' experts theorize that AdSense's integrated functionalities could have been carved up and offered separately as a "basic ad server" and a "basic ad auction platform," those opinions are flawed and should be excluded. There is no evidence that anyone (other than Publishers' experts) conceived of AdSense as anything other than an ad network. And even though "no tying arrangement can exist unless there is a sufficient demand for the purchase of [the tied product] separate from [the tying product] to identify a distinct product market in which it is efficient to offer [the tied product] separately from [the tying product]," *Jefferson Parish*, 466 U.S. at 21-22, Publishers have not mustered any evidence that Google's customers demanded access to AdSense's alleged "basic ad server" functionality separately from access to its alleged "basic ad auction platform" functionality. In addition, summary judgment

on Act 18 should be granted because Publishers lack admissible evidence that Google has market or monopoly power in the alleged tying product market for "basic ad servers."

*Third*, for several of their tying claims, Publishers have no evidence that Google forced them to use the tied products to obtain access to its tying product. For example, the Act 2 claim alleges that the DFP ad server is the tying product and the AdX ad exchange is the tied product, but publishers using DFP frequently use competing non-Google ad exchanges. In such situations, "where the buyer is free to take either product by itself[,] there is no tying problem." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6 n.4 (1958).

*Fourth*, Publishers have not come forward with evidence establishing that any of the alleged tying arrangements harmed competition. For the tying claims based on New Acts 18, 19, and 21, the tied products are "basic ad auction platforms" or "basic ad buying tools," but Publishers have not identified any competing supplier of either product, Elhauge Dep. 64:3-6, 75:20-25, and thus cannot clear the "threshold" of showing "a substantial potential for impact on competition." *See Jefferson Parish*, 466 U.S. at 16; *see also Coniglio v. Highwood Servs., Inc.*, 495 F.2d 1286, 1291-92 (2d Cir. 1974) (affirming summary judgment where defendant had monopoly over tied product). For the other tying claims, Publishers must demonstrate that the tie caused an actual adverse effect on competition for the tied product. *See United States v. Microsoft Corp.*, 253 F.3d 34, 84-97 (D.C. Cir. 2001) (holding that tying arrangement involving a software platform should be analyzed under the rule of reason, rather than per se rule); *see also Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018) (explaining that, under the rule of reason, "the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market"); *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 31 (2d Cir. 2006) ("A viable claim under Section 2 . . . must, like a Section 1 claim, show a harm to competition."). They have not, however, provided any evidence that the alleged ties increased prices, reduced output, or reduced quality in any market for a tied product.

*Fifth*, Publishers lack antitrust standing to pursue the tying claims involving DFP (Acts 1 and 2) because they have no admissible evidence about how much Google would charge for DFP in the absence of the alleged ties. Without such evidence, Publishers cannot demonstrate that Act 1 caused them an injury in fact under either of the "two basic methods that courts use to measure damages in tying cases." *See In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001), *overruled on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006). Nor can they show injury in fact from Act 2 under the "package" approach. *See id.* at 143.

*Sixth*, Publishers' tying claims are time-barred because they were not "commenced within four years after the cause of action accrued." *See* 15 U.S.C. § 15b. Having filed their original complaint on December 15, 2020,[2] Publishers cannot recover on claims that accrued before December 15, 2016. But as Professor Elhauge admits, all of the alleged ties were in place by December 2015, *see, e.g.*, Elhauge Rpt. ¶¶ 269, 288, 294, 296, 304-08, and there is no evidence of subsequent "overt acts" that would restart the statutory period at a later date. *Cf. US Airways,*

---

[2] *See* Compl., *Sweepstakes Today, LLC v. Google LLC*, No. 3:20-cv-08984-LB (N.D. Cal. Dec. 15, 2020), ECF No. 1.

*Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019) (concluding that "each supracompetitive price . . . was not an overt act of its own, but a manifestation of the prior overt act of entering into the . . . contract"). As the statute of limitations bars Publishers' claim for damages, the doctrine of laches likewise bars their claims for equitable relief. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ("[O]nce the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case.").[3]

*Seventh*, many of the tying claims seek to impose on Google a duty to deal with its rivals. For instance, Publishers' claim based on New Act 20 takes issue with Google Ads not bidding into non-Google ad exchanges as frequently as it bids into AdX and seeks to require Google Ads to deal with competing ad exchanges more often. But, "as a general matter, the Sherman Act 'does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal.'" *Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (alteration in original and citation omitted); *see also Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 450 (2009) ("*Trinko* thus makes clear that if a firm has no antitrust duty to deal with its competitors at wholesale, it certainly has no duty to deal under terms and conditions that the rivals find commercially advantageous."). Accordingly, summary judgment should be granted on all claims that depend on Google having some obligation to deal with its rivals, whether such claims are styled as "tying" or anything else.

*Eighth*, if summary judgment is granted on *any* of Publishers' tying claims, then summary judgment should be granted on *all* of their damages claims because they have not calculated the damages from each tie individually. Professor Elhauge calculated damages as the difference between (a) Google's prices in the presence of *all* of the alleged ties; and (b) a yardstick price in a portion of a different market with *no* ties whatsoever. *See* Elhauge Rpt. ¶¶ 455, 457; *see also* Elhauge Dep. 171:18-183:9. Because Publishers did not isolate the degree to which each of the alleged ties contributed to their total alleged damages, there would be no basis for awarding any damages if any one of their tying claims fails. *Cf. Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (reversing class certification when plaintiffs' "model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised").

**Count II: Monopolization**

In Count II, Publishers allege that Google monopolized the Ad Server, Ad Exchange, and Ad Network markets in violation of Section 2 of the Sherman Act. Publ. Compl. ¶ 405. Such claims require a plaintiff to "prove not only that the defendant possessed monopoly power in the relevant market, but that it willfully acquired or maintained that power 'as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 651 (2d Cir. 2015)

---

[3] In addition to their tying claims, Publishers' claims based on several types of non-tying conduct are also time-barred for the reasons discussed above. For example, Professor Elhauge admits that Act 5 (Dynamic Allocation) began by 2009, Act 6 (Enhanced Dynamic Allocation) began in 2014, and Act 8 (Dynamic Revenue Share) began in August 2015. Elhauge Rpt. ¶¶ 316, 324, 334.

(citation omitted). Summary judgment should be granted on Count II because Publishers have failed to prove both that Google possesses monopoly power and that Google engaged in anticompetitive conduct.

As to the threshold matter of monopoly power, Publishers have not even attempted to define an Ad Network market, much less prove that Google has monopoly power in that market, so summary judgment should be granted on the claim related to that market. *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 55 (2d Cir. 2016) (affirming dismissal where plaintiff "fail[ed] to define a plausible relevant geographic or product market for antitrust purposes"). Although Publishers initially alleged that the geographic aspect of their alleged Ad Server and Ad Exchange markets was either the United States or "predominantly English-speaking countries of the United States, Canada, the United Kingdom, and Australia," Publ. Compl. ¶ 121, they have since abandoned the latter claim, *see* Elhauge Dep. 50:20-24, leaving only claims based on United States markets.

There is insufficient evidence for a jury to find that Google possesses monopoly power in a U.S. market for Ad Exchanges. For instance, Google's expert, Dr. Mark Israel, used data produced by Google and its competitors to calculate that Google's share of a U.S. Ad Exchange market declined from a high of 44% in 2020 to 36% in 2023. Israel Rpt. ¶ 292 & Fig. 41; *see also Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 129 (2d Cir. 1981) (recognizing that "a market share below 50% is rarely evidence of monopoly power"). Professor Elhauge ignored that data and relied instead on one document and one website discussing Google's share of a global market for Ad Exchanges, but he offers no opinion whatsoever about Google's share of a *United States market* for Ad Exchanges. *See* Elhauge Rpt. ¶ 206. And Publishers lack sufficient direct evidence of Google's monopoly power in a U.S. Ad Exchange market to make up for these market shares. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107-09 (2d Cir. 2002) (per curiam) (affirming summary judgment where defendant had a 64% market share, despite plaintiff's reliance on "direct evidence"); *see also American Express*, 585 U.S. at 549 (explaining that evidence concerning the defendant's prices was insufficient to establish violation when industry output was growing).

As to anticompetitive conduct, in addition to the alleged tying, the Complaint identifies twelve other acts (Acts 5-16) through which Google allegedly monopolized the markets at issue. Publ. Compl. ¶¶ 20-33, 248-356. Table 2 identifies those allegedly anticompetitive programs.

**Table 2: Publishers' Non-Tying Claims**

| Act | Program |
|---|---|
| 5 | Dynamic Allocation |
| 6 | Enhanced Dynamic Allocation |
| 7 | Bernanke |
| 8 | Dynamic Revenue Share |

Case 1:21-md-03010-PKC   Document 949   Filed 05/02/25   Page 7 of 11

May 2, 2025
Page 7

| Act | Program |
|-----|---------|
| 9 | Line Item Capping |
| 10 | Redacting Auction Reports |
| 11 | Poirot |
| 12 | Elmo |
| 13 | Unified Pricing Rules |
| 14 | Search+ |
| 15 | Minimum Bid To Win |
| 16 | Policing Malicious Code |

The Court previously dismissed the claims based on Act 14 (Search+) and Act 16 (policing malicious code), ECF No. 701, at 37-43, and summary judgment should be granted as to three other Acts for which Publishers did not try to show any competitive harms—namely, Act 9 (line item capping), Act 10 (redacting auction reports), and Act 12 (Elmo). Further, and apart from their Act 1 and Act 3 tying claims (which fail for the reasons described above), Publishers have not shown that any of the remaining Acts harmed competition in the alleged Ad Server or Ad Network markets, so summary judgment should be granted on the claims that Google monopolized both of those markets.

Despite alleging that several Acts harmed competition in a U.S. Ad Exchange market, Publishers have failed to demonstrate that any of those Acts were anticompetitive. All of those challenged Acts benefited Google's advertiser or publisher customers (or both), so none can be characterized as "'conduct without a legitimate business purpose that make[s] sense only because it eliminates competition.'" *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 379 (S.D.N.Y. 2022) (quoting *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014)). And while Publishers' experts argue that Google's products should have been designed differently so that they helped rival ad exchanges compete better against Google, *Trinko* and similar cases foreclose those arguments as a matter of law. Further, Publishers have not shown that any of Google's conduct led to any anticompetitive harms in the alleged U.S. Ad Exchange market, a market where prices are flat or declining, output has exploded, quality has improved, and rivals are growing. *See* Israel Rpt. ¶¶ 586-624.

In addition, summary judgment should be granted on Count II for reasons related to remedies. First, Publishers have not calculated any damages attributable to the non-tying conduct, so the damages claims based on Acts 5-16 all fail. *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 89 (2d Cir. 2000) (recognizing that a plaintiff must "provide the court with some relevant data from which the district court can make a reasonable estimated calculation of the harm suffered"). Second, claims for injunctive relief for much of the

challenged conduct—including Act 5 (Dynamic Allocation), Act 6 (Enhanced Dynamic Allocation), Act 8 (Dynamic Revenue Share), and Act 11 (Project Poirot)—should not proceed because the challenged aspects of those programs no longer exist, and there is no evidence that Google would revive them.  *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969) (requiring for injunctive relief a demonstration of "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur").

**Additional Standing Problems**

Even setting aside all of these problems, many members of the two putative Publisher Classes lack standing to pursue certain of their federal antitrust claims.  Publishers pled that there are separate classes of publishers that used AdX ("Class 1") and those that used AdSense ("Class 2").  *See* Publ. Compl. ¶ 368.  Some of Publishers' tying claims involve AdSense, but not AdX (Acts 3-4, New Acts 17-19, New Act 21), while the reverse is true of the other tying claims (Acts 1-2, New Act 20).  All of the non-tying claims involve only AdX (and not AdSense).

Because the Class 1 Publishers were not directly impacted by conduct involving only AdSense, they would not be efficient enforcers of claims related to AdSense, *see In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 138 (2d Cir. 2021), and summary judgment should be granted on those claims.  Likewise, summary judgment should be granted on the Class 2 Publishers' claims related to AdX because they were not directly impacted by conduct that involved only AdX.

Separately, companies participating in Google's Multi-Customer Management program (including predecessor programs) also lack standing to pursue damages claims because they do not purchase AdX or AdSense services directly from Google or are not members of either of the alleged classes.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

**Count III:  California Unfair Competition Law**

Count III alleges that Google violated California's Unfair Competition Law ("UCL") by engaging in "deceptive, fraudulent, unlawful and/or unfair business acts and practices."  Publ. Compl. ¶ 409; *see also* Cal. Bus. & Prof. Code § 17200.  For the reasons discussed above, the undisputed evidence shows that Google's conduct was not "unlawful."

Publishers have no evidence of at least three required elements of a UCL claim for "fraud."  *First*, they have not come forward with evidence that Google made any statement that is "either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (internal quotation marks and citation omitted).  *Second*, they do not offer any evidence of "actual reliance"—that is, they have not shown that a "misrepresentation was an immediate cause of the injury-producing conduct."  *See In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009).  *Third*, they have not "demonstrate[d] some form of economic injury" from a misrepresentation, which is required to establish their standing to bring a UCL claim in the first place.  *See Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011).

Nor can Publishers prove that Google's conduct was "unfair" because, for the reasons

discussed above, the challenged conduct did not "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws . . ., or otherwise significantly threaten[] or harm[] competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tele. Co.*, 973 P.2d 527, 544 (Cal. 1999); *see also In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 144 n.12 (affirming dismissal of UCL claim predicated on the same alleged conduct as deficient antitrust claims).

In addition, the only remedies available under the UCL are injunctions and restitution, Cal. Bus. & Prof. Code § 17203, and federal courts lack jurisdiction to award those equitable remedies where (as here) plaintiffs have adequate remedies at law, *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997); *see also Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020) (requiring plaintiff to show a lack of adequate legal remedy to invoke federal equitable jurisdiction over UCL claim). And even if there were jurisdiction to award restitution, Publishers have failed to prove how to calculate restitution in this case—that is, they have not calculated "[t]he difference between the price [they] paid and the actual value [they] received" from Google's ad tech products. *See In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 889, 900-01 (Ct. App. 2015).

**Count IV:  Cartwright Act**

In Count IV, Publishers claim that Google violated California's Cartwright Act by engaging in the conduct discussed above. *See* Publ. Compl. ¶¶ 413-21; *see also* Cal. Bus. & Prof. Code §§ 16720, 16726. But the Cartwright Act does not cover unilateral conduct, so Publishers cannot recover under that law for any of the non-tying conduct. *See Beverage v. Apple, Inc.*, 320 Cal. Rptr. 3d 427, 436-37 (Cal. Ct. App. 2024) ("[U]nlike its federal counterpart, the Sherman Act, single firm monopolization is not cognizable under the Cartwright Act." (citation and quotation marks omitted)). And their state-law tying claims fail for the same reasons as their federal tying claims. *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) (explaining that "analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act").

**Motions *in Limine***

Google anticipates moving to exclude opinions of one or more of Publishers' experts. If the Court grants Google's motions with respect to expert opinions that are necessary to Publishers' claims, then summary judgment would be appropriate on those claims.

**Proposed Procedures for Briefing**

Rather than establish a briefing schedule now, Google respectfully requests that the Court defer setting deadlines for summary judgment briefing in the Publisher case while the motion for class certification is pending.[4] Resolution of the class certification motion could affect the grounds on which Google moves for summary judgment and perhaps even obviate the need for motion practice altogether.

---

[4] In a separate pre-motion letter, Google is requesting that the Court also defer summary judgment briefing in the Advertiser case. Google is not requesting deferred summary judgment briefing in any other cases in the MDL.

If the Court would prefer for the parties to brief summary judgment in the near term, Google respectfully requests that its motion and opening brief be due on September 5, 2025, Publishers' opposition brief be due on October 20, 2025 (45 days later), and Google's reply be due on November 19, 2025 (30 days later).[5]  Plaintiffs previously stated that they anticipated proposing a July 1 deadline for opening briefs, "with oppositions and replies due 45 and then 30 days thereafter."  ECF No. 941, at 3.[6]  Because class certification briefing (and briefing on related motions *in limine*) will not conclude before July 16 (and could extend until July 30), ECF Nos. 942, 944, Plaintiffs' proposal would require Google to submit four different summary judgment motions (as well as briefing on motions *in limine* related to summary judgment) in the midst of the same period when it will also be briefing class certification (and motions *in limine* related to class certification).  By contrast, Google's proposal would require filing of summary judgment motions on September 5, about one month after briefing related to class certification concludes on July 30.  In light of the number of motions likely to be filed, the complexity of the issues involved, and their importance to the resolution of the cases in the MDL, a September 5 deadline for summary judgment motions and opening briefs would be more appropriate than a July 1 deadline and would still keep this case moving forward efficiently.

Google further requests that the parties be allowed up to 60 pages for opening and opposition briefs concerning summary judgment in the Publisher case and up to 30 pages for reply briefs.[7]  On April 18, Plaintiffs proposed "maximum page limits of 25 pages for opening briefs, 25 pages for opposition briefs, and 15 pages for replies."  ECF No. 943-3, at 13.  As explained in the pages above, Publishers' complaint includes four counts based on how twenty-one types of conduct allegedly affected at least three relevant product markets and two relevant geographic markets.  In light of this sprawling and complicated case, Plaintiffs' page-limit proposal should be rejected because it would foreclose Google from fully presenting all of its substantial arguments for summary judgment.  Google does not object to Plaintiffs' proposed page limits for the Advertiser and Inform cases, but those same limits would unfairly prejudice Google if they were applied to the far broader Publisher case.

\*     \*     \*

For all of these reasons, Google respectfully requests that the Court (a) allow it to move for summary judgment on all counts in the Publishers' complaint; (b) defer entering a summary judgment briefing schedule in the Publisher case (or, alternatively, set a September 5 deadline for

---

[5] In addition, Google respectfully requests that the Court (a) establish the same briefing schedule for motions *in limine* regarding expert testimony relied upon by a party to support or oppose summary judgment; (b) require each side to include in a single brief all arguments regarding all expert testimony relevant to summary judgment: (c) allow up to 20 pages per expert for each side's opening and opposition briefs and up to 10 pages per expert for reply briefs; and (d) dispense with the requirement that any party file a pre-motion letter concerning any such motions. *Cf.* ECF No. 944 (addressing motions *in limine* regarding expert testimony relied upon by a party to support or oppose class certification).

[6] On April 9, as part of the parties' discussions concerning briefing of summary judgment and other issues, Google proposed that summary judgment motions be due on August 1.  *See* ECF No. 943-3, at 14-15.  On April 29, the Court set a briefing schedule for certain motions *in limine* related to class certification that extended as far as July 30.  ECF No. 944.  Now that the schedule for briefing related to class certification extends to the end of July, Google submits that September 5 would be a more appropriate deadline for summary judgment motions.

[7] On April 9, Google proposed 50 pages each for the opening and opposition briefs and 25 pages for the reply, *see* ECF No. 943-3, at 14-15, but more pages will be required to address the subsequent decision in the Virginia case.

summary judgment motions and opening briefs); and (c) allow the parties up to 60 pages for opening and opposition briefs concerning summary judgment in the Publisher case and up to 30 pages for reply briefs.

                    Sincerely,

                    */s/ Justina K. Sessions*
                    Justina K. Sessions
                    FRESHFIELDS US LLP
                    855 Main Street
                    Redwood City, CA 94063
                    Telephone: (650) 618-9250
                    Email: justina.sessions@freshfields.com

                    Eric Mahr
                    Andrew J. Ewalt
                    700 13th Street, NW
                    10th Floor
                    Washington, DC 20005
                    Telephone: (202) 777-4545
                    Email: eric.mahr@freshfields.com
                            andrew.ewalt@freshfields.com

                    Craig M. Reiser
                    AXINN, VELTROP & HARKRIDER LLP
                    630 Fifth Avenue, 33rd Floor
                    New York, New York 10111
                    Telephone: (212) 728-2200
                    Email: creiser@axinn.com

                    *Counsel for Defendants Google LLC, Alphabet Inc., and YouTube, LLC*

CC: All Counsel of Record (via ECF)